Thank you, Your Honors, and may it please the Court once again. The patent in this case, the 772 patent, another 10-page patent, this covers another specific aspect of the media ecosystem invented by Russell White in the year 2000. Here, the core of this patent is the dual download functionality. This is the ability for a wireless device to request media content and then to have that content delivered to both a wireless device and a personal computer in response to that one single request. This is the core issue here, and the core error here is a claim construction issue ultimately and it's the PTO's failure to adequately appreciate what this dual download functionality entails. Now, for the panel's reference, the claim is at Appendix 5. It's set forth in the Board's decision. You'll see there that both the Board and, as you'll see in the party's briefing, everybody refers to these last three limitations as... I'm having a hard time seeing how the language... Your argument is that the language, as I understand it, is that the language in response to the request in the third limitation from the end of the claim, that phrase, that should be read as applying to all three of the last limitations of the claim, that it qualifies them and that everything that occurs after in response to receiving the request must occur after that and there can't be any more intervening steps. Is that how I should understand your argument? Yeah, that is our argument. How can you argue that when it's a comprising claim? Well, I would argue that I think the key... One, the claim should be read sequentially, and I'll point to a couple of things. I agree it should be read. It could be read. I don't know if it should be read sequentially, but it doesn't mean there can't be intervening steps, regardless of whether it's read sequentially or not. Why couldn't there be intervening steps? I would argue that there are no intervening steps set forth in the claim. There's the third... That's right, but it's a comprising claim. That means that something that has intervening steps could either infringe the claim or invalidate the claim if it's prior. Well, I would point... I think the way... I would agree that we're interpreting more narrow than just... I understand the comprising language. I think we're interpreting it more narrowly consistent. I'll point you to a couple of things in the specification that talk about how this is... The core functionality is this ability to receive a request and then send the content to two different devices. Without any additional request. Without any additional request. I think part of that is innate in the making available element itself, in that what you have in the making available element is... The content doesn't just pre-exist, and then it's just sent at some indeterminate amount of time. It's made available. I think that that's one of the arguments that the PTO and the intervener here have suggested, is that the content can just exist and then be sent in response to a request and multiple requests. It doesn't read limitations together as we submit they should be. So... What in the specifications description of what was invented here distinguishes these two readings? One says you get a request and then you set it up and put the stuff on the shelf. And then you later, obviously, after they're on the shelf, the two things, you it on the shelf is what has to be done in response to the request, but maybe additional requests are needed for each of the items from the shelf. Your version is no more requests. How do we figure out why you're right that no more requests for what you have made available? Because made available sounds like maybe it's send it if asked. Well, I think the first part of the answer to that question is to look at the last two limitations in the sending steps and how those are written. Those refer back to the third limitation. So what I believe you've just described, Your Honor, is just the general concept of making something available and then sending it. And here, the last two elements, I think, are more specific than that. They're sending content that is made available in the third limitation. So the last two limitations, you're sending a first version of selectable content to a specific device. And then in the last limitation, you're sending a second version of selectable content to a second device. And they're specific devices. So I don't know if that answers your question, Your Honor, but I think that's the distinguishing characteristic over just the general putting something on a shelf and then sending it at a later time. And just looking at the claim, I mean, looking at your third limitation in response to receiving a request, there's making a first version available, making a second version available, semicolon. Then there's the fourth limitation, sending the first version, semicolon. Then there's a fifth limitation, sending the second version, period. I guess, I mean, I would assume that if these different actions were clustered together in a single paragraph limitation, then you're probably on to something. That in response to receiving a request, all these various actions are happening in response to that request. But when it's divided out like this through semicolons, it does start to make it look like, or at least it's not separate actions. And we're supposed to be using the broadest reasonable interpretation. So I guess that's what I'm struggling with. Yeah. And I think even under a broadest reasonable interpretation, and I'd point the court to the Proxicon case here, the construction still has to reasonably reflect not only the plain language of the claim, but also the specification, which I'd like to point... I was going to say, is there a specific way to discuss? So the appendix site is 2885 and it's column 16 of the patent. And there's a couple paragraphs, and I'll just point to some kind of key language. So in respect to the making available piece, the patent talks about how the format of the download may match or conform to selected plurality of devices as destination devices for receiving... I'm sorry, what specifically are you reading from? What column, what line? I should be at column 16 lines four. Four. Okay. Yep. Three and four. And I think what's also quite important in this case is with respect to the specification language, and I don't want to, I don't mean to make the panel jump around, but in the right of appeal notice, the examiner looked at these elements, looked at this aspect of the specification and said that they appear to support the claim dimension and more specifically, the dual download concept, as we've argued it. And that's at 1670 of the appendix. So it's not just our reading of the claims. It's not just how we view the specification. It's also the examiner in this instance. So ultimately, I think the construction and whether the panel accepts that or not is the key to this positive issue. And under our construction, there shouldn't be any dispute that the references here don't disclose dual download functionality. And again, I think this is in the examiner's answer. This is pretty clearly set forward that the only three references here are Rolf, I'm sorry, Brooks, Rolf, and Van Zost. And none of those references disclose the dual download functionality. And I'll just put out a couple of sites here at 2213 of the examiner's answer. There's a direct quote that neither Brooks nor Rolf appear to enable the sending of content to two different devices on a singular request. So they don't disclose the dual download functionality. And then later on in the examiner's answer at 2216, the examiner concludes the same with respect to Van Zost, that it does not appear to teach the additional step of actually downloading two different versions of content in two different devices. So I don't think there should be any dispute here that the references themselves don't teach this. Now, both the board and the intervener here have suggested that somehow, despite the fact that none of these references teach this functionality, that their combination would somehow render it obvious. And I would submit that when the references don't explicitly or expressly teach it, I don't know how there'd be anything else in the record evidence in this case that would teach or suggest to one of Skill in the Art the functionality. Well, just so I can unpack this, let's assume for the moment that the board's claim construction is right on your dual download feature, that it doesn't require what you're arguing. Then what would your argument be about the obviousness combination of either the Brooks-Rolfe combination or the Rolfe-Van Zost combination? Well, Your Honor, if the panel were inclined to accept the board's construction, I would have to concede that the breadth that the board has construed the claim would be met by the combinations in this case. Okay. So your argument about the combinations are really predicated on us adopting your proposed construction of the claim? That's correct, Your Honor. Okay. And if there are no questions at this time, I'll yield the balance. Thank you. Thank you. Good morning. May it please the Court? Just following up on the claim construction issue, I think appellant pointed to A2885, column 16, lines 3 through 5 for support and inspect for this, for their narrow construction. And I just wanted to point out, this actually talks about just one embodiment. And it says, a user may select a plurality of devices as destination devices for receiving downloads. It doesn't actually talk about sending the selected file to those devices. It just talks about selecting the devices. And if you look back at 2882, would your argument actually be any different if it said for sending? I mean, all that language would do then is say you select the devices for sending, but you may have to hit two buttons and say send to this and send to the other one. Right. The point is, it's not actually sending the files in response to one request. It's just selecting the devices you want to send it to. And just bear with me. If you look at column 10 at 2882, lines 49 to 51, it actually gives another example of sending it to more than one device. It says you can send it to your own device and then it says, starting at line 49, you can send a friend link, may also be provided allowing a user to send selective audio information to a friend's electronic device. But that's sending a link. So presumably the friend would have to then click on the link, which would be another request to actually send the file. I think Judge Tronto's point was that even if it did say that you could do the dual download function, how do you read that into the claim? How does that change anything? Even if the specification said you may do it this way, how would we read that into the claim? Yeah, that's a good point. Because you're right. That's just one embodiment and it would actually be improper to read the claims focused on just one very narrow embodiment, especially under the VRI standard. And when you look at the rest of the specification, it talks about downloading content to just one selected device. It's not focused on this dual download limitation. And as Judge Cheng correctly pointed out, the dual download limitation is three separate limitations. And since it has that comprising language, it certainly encompasses allowing a second request, for example. So unless there's further questions... Can I ask you a question about the 317? A question I realized we may have exhausted that issue, but there's the same threshold argument you make in this case as you did in the earlier one about they basically haven't exhausted that. To what review forum would a exhausted claim of that sort go? Here or to the Eastern District of Virginia or where? No, it would go to the agency. I think in this... After the agency is done. So the agency says, yeah, we really meant it. Then what? Where is that judicially reviewable? It's not considered by the board because the board doesn't consider a petition for denial of a petition to terminate. It would come up to the Federal Circuit or I guess if they filed a 145 action, it could go to district court. Okay, but it wouldn't be a civil action in Eastern District of Virginia under the APA. It would get packed together with the final decision by the board. I believe that's correct. And then it would be part of an appeal here. I believe so, yes. Yeah, and in this case, Apple settled. And so there was no... The case was dismissed without prejudice because Apple had settled out. There was no final decision with respect to Apple that they had failed to meet their burden approving the invalidity of any claim in this case. So that's why the petition to terminate was denied. Unless there's any further questions, I'll sit down. Thank you, Mr. McBride. Thank you, Your Honor. I just want to clear up two things real quick. Again, this is on the same construction issue. The first is counsel's reference to column 10 of the patent. That's talking about sending a link. That's not the dual download functionality. So I would refer the panel back to column 16, which is the one embodiment that does discuss this. And I think as a last point, it's important to note that this was decided in the re-examination. And again, this is at 1670. And I'll just read from what the examiner said here. And this is the examiner quoting, examining the passages that I've just cited to you in column 16. Are you suggesting that the examiner's decision or what the claims mean takes precedence over what the PTAB says the claims mean? I think it's certainly relevant and suggests that the PTAB's decision should not stand. I mean, I don't know that it takes precedent. But I think that the fact that the issue was looked at by the examiner who looked at the whole record and had the most time with the patent and with the issues in this re-examination looked at it, decided that the claim should be read to have dual download functionality. I think that that's relevant. But the PTAB would review that de novo. And what standard of review do we apply to the PTAB's claim construction? I think it's de novo under Proxicon, especially here where you have, I think that primarily the issue is the intrinsic evidence and what the patent said. Thank you, Your Honor. Thank you. The case is submitted.